**SO ORDERED.**

**SIGNED this 12 day of June, 2008.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Neal Alan Spurling | ) | No. 06-14207 |
| Angela K. Spurling | ) | Chapter 7 |
| | ) | |
| Debtors | ) | |

**MEMORANDUM**

The case is before the court on the trustee's objections to the amended claims of Caterpillar Financial Services Corporation, Jose Rocha, Efrain Lara, and Aztec Framing Contractors, Inc., and on Caterpillar's objection to the trustee's final report. The amended proofs of claim assert claims for deficiencies remaining after creditors foreclosed on their collateral during the course of the bankruptcy case.

**I.**

On December 1, 2006, the debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. On December 21, 2006, Caterpillar filed a proof of claim asserting a claim in the amount of $168,691.64. The proof of claim stated that the claim was secured by certain equipment the value of which was "to be determined." On January 3, 2007, the court entered an agreed order granting Caterpillar relief from the automatic stay with respect to its collateral.

On February 7, 2007, the court issued a notice requiring creditors to file proofs of claim by May 8, 2007. On February 13, 2007, Jose Rocha, Efrain Lara, and Aztec Framing Contractors, Inc., filed proofs of claim asserting claims in the respective amounts of $8,074.00, $15,029.73, and $37,102.00. Each of the proofs of claim asserted that the claim was secured by collateral having an "unknown" value. Attached to the proofs of claim were copies of notices of mechanic's and material supplier's liens with respect to Lot Nos. 983-85 of the Hamilton on Hunter subdivision. On February 22, 2007, the trustee abandoned those three lots. Thereafter, the mortgagee(s) foreclosed on the lots, with the mechanic's/supplier's lien holders receiving nothing.

On February 15, 2008, the United States trustee filed the final report that the trustee had earlier submitted to the United States trustee. The final report indicates that it was the trustee's intention to pay all priority claims in full and then to pay a dividend of approximately 11% on general unsecured claims. Attached to the final report, among other things, is an exhibit setting forth the name of each creditor, the amount of that creditor's allowed claim, and the amount of the proposed payment to that creditor. The proposed distribution indicates that nothing is to be distributed to Caterpillar, Mr. Rocha, Mr. Lara, or Aztec Framing Contractors, Inc. Also on February 15, 2008,

Caterpillar filed an amended proof of claim, reducing the amount of its claim from $168,691.64 to $44,617.31 and recharacterizing the claim from secured to unsecured.

On February 19, 2008, the court issued the notice of the final report, which included the proposed distribution. Notice of the final report and proposed distribution was mailed to creditors on February 21, 2008. On February 27, 2008, Caterpillar filed an objection to the trustee's final report and, the next day, the trustee filed an objection to Caterpillar's claim as amended on the ground that the amended claim was untimely. On March 25, 2008, Mr. Rocha, Mr. Lara, and Aztec Framing Contractors, Inc., filed amended proofs of claim, recharacterizing their claims from secured to unsecured. Two days later, the trustee objected to those three creditors' claims as amended on the ground that the amended claims were untimely.

## II.

Because all the original proofs of claim were timely filed by these four creditors, the question presented is whether their amended proofs of claim, filed after the bar date, can be recognized so as to share in the forthcoming distribution to unsecured creditors. While there is an established deadline for filing proofs of claim in bankruptcy cases, neither the Bankruptcy Code nor any provision of the Federal Rules of Bankruptcy Procedure specifies a deadline for filing an amendment to a timely filed proof of claim. In the absence of any specific rules concerning the amendment of proofs of claim, the courts have often looked to Fed. R. Civ. P. 15(c) for guidance. *Highlands Ins. Co. v. Alliance Operating Corp. (In re Alliance Operating Corp.)*, 60 F.3d 1174, 1176 (5th Cir. 1995); *Excel Energy, Inc. v. Smith (In re Commonwealth Institutional Sec., Inc.),* 286 B.R. 851, 857 (W.D. Ky. 2002), *aff'd*, 394 F.3d 401 (6th Cir. 2005); *United States v. Miller (In re Miller)*, 118 B.R. 76, 78-79 (E.D.

Tenn. 1989); *In re Blue Diamond Coal Co.,* 147 B.R. 720, 725 (Bankr. E.D. Tenn. 1992), *aff'd*, 160 B.R. 574 (E.D. Tenn. 1993); *In re White Motor Corp.*, 59 B.R. 286, 289 (Bankr. N.D. Ohio 1986). Rule 15(c) provides that an amendment will relate back to the filing of the original pleading if "the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The trustee argues that the unsecured claims asserted in the amended proofs of claim do not arise out of the conduct, transaction, or occurrence set forth in the original proofs of claim because those asserted secured claims.

Thus, the precise question before the court is whether or not a deficiency claim arises out of the same "conduct, transaction, or occurrence" as did the secured claim that preceded it. The trustee relies on the chapter 13 case of *In re Winters*, 380 B.R. 855 (Bankr. M.D. Fla. 2007), in which the bankruptcy court held that an amended proof of claim for a deficiency would relate back to the prior secured proof of claim only if the creditor had expressly reserved the right to amend its original secured claim so as to seek a deficiency. *See also In re Hibble*, 371 B.R. 730, 737 (Bankr. E.D. Pa. 2007); *In re McBride*, 337 B.R. 451, 460 (Bankr. N.D.N.Y. 2006). The courts following this line of reasoning seem to believe that a deficiency claim cannot arise out of the same conduct, transaction, or occurrence set forth in the original proof of claim unless the creditor, in its original proof of claim, has explicitly reserved the right to seek a deficiency should the sale of its security fail to make it whole. None of these chapter 13 cases are from courts within the Sixth Circuit, and their rationales conflict with the more liberal rule prevailing here.

In *Szatkowski v. Meade Tool & Die Co. (In re Meade Tool & Dye Co.),* 164 F.2d 228 (6th Cir. 1947), the Sixth Circuit permitted the post bar date amendment of an unsecured claim so as to

make it into a secured claim. In so doing, the court followed its earlier case of *In re Ashland Steel Co.,* 168 F. 679 (6th Cir. 1909), in which it had held it proper to allow the amendment of a claim so as to establish it as a priority claim for the first time. Despite the fact that the amendment was made after the bar date had passed, the Sixth Circuit held:

> [T]he substantive claims having been proven within the time allowed by the act, it was within the power of the court to allow the claims priority, and give them the preference to which by law they were entitled, notwithstanding no definite claim of the kind had been made during the year. It was not the allowance of a new claim, as counsel for petitioners insist, but the giving full scope to one already proved. It was essentially the ascertainment of its rank to be regarded in the distribution of the assets.

*Id.* at 680. The court went on in *Ashland Steel* to say that "[t]he word 'claim' in section 57n . . . we should suppose, refers to the *substance of the obligation*, rather than to any mere attribute of it." *Id.* at 681 (emphasis added). The substances of the four creditors' obligations in the case at bar have never changed: each amended claim has its source in the same contract and indebtedness described in its predecessor proof of claim. The only difference is that the original proofs of claim are secured claims while the amended ones are unsecured. As the Sixth Circuit noted, the bankruptcy status of the claim is only an "attribute" that should not block an otherwise proper amendment of the claim. *See also Lewith v. Irving Trust Co.*, 67 F. 2d 855, 856 (2d Cir. 1933) (L. Hand, J.) (citing *Ashland Steel,* holding that creditor may amend an unsecured claim to secured claim after bar date, and stating that "[s]uch an amendment does not change the cause of action . . . ; the claim rests upon the same debt as before.").

*Meade Tool & Die* permits a creditor to amend its original claim from unsecured to secured. *Ashland Steel* permits the creditor to amend from unsecured to priority. In both cases the amendments were permitted back across the bar date boundary. If those amendments were permitted because they were not considered to present new claims, then it would seem to be equally, if not more, appropriate to allow the post bar date amendment of a secured claim after foreclosure of its security has resulted in a deficiency that arose from the same indebtedness.

Several courts follow this rationale. In *In re Richard Roberts Lexington Associates, Ltd.,* 171 B.R. 546 (Bankr. W.D. Va. 1994), the court permitted the amendment of the original secured proof of claim to show a deficiency well after the bar date had passed. The court observed that "the deficiency claim of [the] Bank arose from the same transaction or occurrence as the timely filed secured claim. Moreover, [the] Bank has given sufficient notice of its claim in the course of the bankruptcy proceeding by timely filing its secured claim." *Id.* at 549. Similarly, the bankruptcy court in *In re Delmonte*, 237 B.R. 132 (Bankr. E.D. Tex. 1999), permitted the amendment of a secured claim to assert an unsecured deficiency claim after the bar date had passed, finding that the amended claim "relates to and arises out of the same transaction as the original claim." *Id.* at 135-36; *accord*, *In re Brooks,* 370 B.R. 194 (Bankr. C. D. Ill. 2007); *In re Tessier*, 333 B.R. 174 (Bankr. D. Conn. 2005); *In re Haack*, 165 B.R. 501 ( Bankr. M.D. Fla. 1994).

In the *Winters* case, the chapter 13 case relied upon by the trustee, the court concluded that the principal consideration in determining whether to permit a creditor to amend its secured claim to an unsecured claim after the claims bar date depended upon whether the original claim reserved the right to do so. Not only does this prerequisite conflict with the more liberal amendment rule pre-

6

vailing in this circuit, but it also ignores the obvious warning given by the fact that a creditor has filed a secured claim in a chapter 7 case. Since neither Fed. R. Bankr. P. 3002(a) nor 11 U.S.C. § 501(a) requires a secured creditor to file a proof of claim, the very filing of such a claim puts the trustee on notice that the creditor may be looking to the estate for some kind of benefit beyond the security it already has. The most obvious such benefit would be the payment of the creditor's unsecured deficiency claim.[1]

In *In re Fell*, 112 B.R. 219, 221 (Bankr. N.D. Ohio 1989), the court recognized:

> The legislative history indicates that § 501(a) is permissive only, and that no creditor is required to file a proof of claim. However, if a creditor wants the undersecured portion of its claim to be allowed and paid pursuant to 11 U.S.C. § 506(a), then a proof of claim must be filed in accordance with Bankruptcy Rule 3002.

*Id.* (citations omitted). Yet, at the time a secured creditor must file its claim, the creditor may not know the real value of its security or even whether it still exists. The creditor only knows that, according to its documents, the creditor is *entitled* to some security for its debt. Such a creditor may even be incapable of accurately computing the secured and unsecured portions of its debt. Because a secured creditor has no reason to file a claim other than to cover any deficiency that might arise upon foreclosure of the security, the fact that a secured claim has been filed in a chapter 7 case implies and foreshadows the possibility of a deficiency claim. Every experienced bankruptcy trustee

---

[1] Another tangential benefit to a creditor's filing of a secured claim is that it prompts the trustee to abandon the creditor's collateral after reviewing the documents attached to the claim and assuring himself that the creditor's security interest is perfected. However, filing a secured claim is never required to accomplish this purpose, and a secured creditor can, without filing a claim, simply provide the bankruptcy trustee with "proof that the [security] interest has been perfected . . . ." E. D. Tenn. LBR 3001(b)(1). A letter will suffice.

knows that collateral valuations by creditors in their proofs of claims are often inaccurate, that foreclosure is likely to come about during the bankruptcy case, that the real proof of the collateral's value will be foreclosure, and that the creditor may assert an unsecured claim for any deficiency. Sometimes that claim will perforce be submitted after the bar date because the stay has not been lifted until that point and foreclosure was impossible prior thereto.[2]

To sum up to this point, the controlling precedent in this circuit is liberal in allowing the amendment of claims, even where the bar date has run, from unsecured to secured and from unsecured to priority. The Sixth Circuit considers the underlying transaction or occurrence, within the meaning of Rule 15, to be the original transaction between the debtor and the creditor in which the debt was established. The debt is composed of the obligation and the amount due. Other features surrounding the debt, such as whether it is secured or not, are incidental and as to them claims may be amended without incurring the objection that the creditor is erecting a new claim. The *Winters* case adds a new requirement – reservation of the right to amend – which no Sixth Circuit case has approved. There is no law or policy in this circuit that requires creditors filing secured claims to state the contingencies under which they might be partially unsecured or to guess how unsecured they might eventually be. In *Richard Roberts Lexington Associates*, the junior lien creditor was not

---

[2] The other case relied upon by the trustee is *Highlands Insurance Co. v. Alliance Operating Corp. (In re Alliance Operating Corp.)*, 60 F.3d 1174 (5th Cir.1995), in which the Fifth Circuit held that a creditor could not amend its original unsecured claim to the status of a priority claim after the bar date had passed. *Alliance Operating Corp.* is in direct conflict with *In re Ashland Steel Co.*, 167 F. 679 (6th Cir. 1909). Thus, *Alliance Operating Corp.* is not consistent with the law of this circuit. Even if it were, it is distinguishable from the case at bar, wherein the creditors seek to amend their secured claims to show an unsecured deficiency. A deficiency is a foreseeable possibility whenever a secured claim is filed. *In re Richard Roberts Lexington Assocs., Ltd.*, 171 B.R. at 549.

required to have filed its secured claim with the proviso: "I might become unsecured if the senior creditor forecloses." In the same way, it would seem a meaningless formality to require a secured creditor, whose proof of claim states that it does not know the exact value of his security, to also state, as a conclusion, that it may not be fully secured. The better rule is to permit these creditors to amend their original claims to show a deficiency if such should result during the bankruptcy proceedings and no inequity is done thereby.

Considering the foregoing authorities, the court holds that a secured creditor may amend its proof of claim to show an unsecured deficiency after the claims bar date has run. No reservation of a right to do so is required in this circuit. To the extent that foreseeability may be a consideration, the very fact that a secured creditor files any claim at all in a chapter 7 case is a statement that it wishes to share in the estate as an unsecured creditor. Otherwise, the secured creditor would not have filed a proof of claim and would simply have relied upon its security. This is even more true where its secured claim states that the value of its collateral is "to be determined" or that the value of the collateral is "unknown." These statements imply that a subsequent valuation of the collateral, either by the court or through foreclosure, might result in an unsecured deficiency claim. The transaction or occurrence to which an amended claim must relate back is the transaction between the creditor and the debtor out of which the indebtedness and security interest arose. In this case, the amended claims filed for deficiencies relate back to the transactions or occurrences that generated them and so will be allowed.

### III.

The trustee does not stop there, but goes on to urge the court to promulgate a judicial rule that amendments to proofs of claim must be filed by the time the United Sates trustee files the final report with the court. The trustee argues that, if amended claims are permitted beyond that date, the trustee would be faced with the prospect of having to continue updating his distribution calculations until a final distribution is made. Also, since creditors now receive notice of the trustee's distribution calculations, the trustee might be forced to send a new notice to those creditors every time the distribution calculations change with each successive filing of an amended claim. Moreover, the trustee argues that, unless there is a specific cutoff date for filing amended claims, the trustee would be forced to review the claims register continuously for possible amended claims until a final distribution is actually made.

In making his argument, the trustee relies on a line of cases holding that, in addition to the requirement that the amendment "reasonably relate" to a timely proof of claim, an amendment will not be permitted unless allowing the amendment would be "equitable under the circumstances." *In re Eagle-Picher Indus., Inc.*, 1997 Bankr. LEXIS 636, at *13 (Bankr. S.D. Ohio May 7, 1997). If, for example, there is a long, unexplained delay in filing the amended claim, and if that delay results in material prejudice or harm to the administration of the bankruptcy case, the line of cases relied upon by the trustee states that a court could, in its discretion, refuse to allow the amended claim. *Id.* at *16-*17. Hence, applying the case authority cited by the trustee to this case, the question posed is whether the allowance of these amended claims would be equitable under the circumstances of this case.

In considering those circumstances and whether it would be fair to allow the amended claims, the court notes first the consequences of permitting the amended claims in this case. First, the trustee would have to recalculate the amount of distribution to each creditor in light of these amendments. Presumably, that would not be time-consuming or burdensome given computer tools and calculators. Indeed, § 726(a)(1) of the Bankruptcy Code expressly contemplates distributions on one type of claim – a priority claim – even though no proof of claim is filed until after the mailing of notice of the trustee's final report (so long as the proof of claim is filed within 10 days after the mailing to creditors of the summary of the trustee's final report or, if earlier, the date on which the trustee commences final distributions). Thus, Congress obviously discounted the practical problem about which the trustee complains in this case, at least insofar as priority claims are concerned.

Second, creditors would end up receiving less than what the trustee's original proposed distribution showed. In this regard, the court knows of no reason why a trustee's final report cannot be worded in such a way as to alert creditors that a specific distribution to a particular creditor might depend on the final allowance of all unsecured and priority claims, thus eliminating the need to keep sending notice to creditors when and if an amended claim is filed or priority claim allowed after the trustee's final report is filed. *See* 11 U.S.C. § 704(a)(9); Fed. R. Bankr. P. 2002(f) (not specifying content of final report or notice thereof). With respect to this case, and the notice that has already been sent to creditors, the problem can be easily resolved by the entry of an order to be served on all creditors that allows the amended claims and explains that the claims were allowed after the trustee's final report. Hence, it appears that little harm would result if the amended claims are allowed in this case.

As noted, the trustee urges the court to promulgate a judicial rule that sets a deadline for filing amended proofs of claim. Even if the court were inclined to create such a deadline, it would be at a loss as to precisely what the deadline should be. Neither the filing of the final report with the United States trustee nor its filing with the court nor the issuance of the notice of the final report would be an appropriate deadline, because those events could take place at any point in the case (starting with the bar date) without notice to creditors. Moreover, the deadline would have to be prior to the submission of the final report to the United States trustee if the trustee is to eliminate the possibility of having to calculate a new proposed distribution. The court simply could not devise a satisfactory deadline, even if it were inclined to do so. Moreover, and most importantly, neither the Bankruptcy Code nor any applicable rule of procedure imposes a deadline for amending proofs of claim. Under Rule 15(c) of the Federal Rules of Civil Procedure, applied in the context of amended proofs of claim, the amendment (whenever filed) will relate back to the filing of the original proof of claim so long as the amended proof of claim relies on the same conduct, transactions, or occurrences upon which the original proof of claim was based. If some other deadline for amendments to proofs of claim is desired, it is up to Congress or the Supreme Court, not this court, to promulgate such a statute or rule.

The trustee does pose a hypothetical situation in which the proof of claim is not amended until just before the distribution is made such that the trustee did not know of the amended claim. In such circumstances, the court may well bar the amendment as inequitable. That situation, however is not the situation presented here where the trustee became aware of these amended claims before any distribution was made.

Accordingly, based on the circumstances presented in this case, the court cannot find that the trustee has shown that equity requires the amended proofs of claim filed in this case to be barred.

## IV.

For the foregoing reasons, the court will enter an order sustaining Caterpillar Financial Service Corporation's objection to the trustee's final report and overruling the trustee's objections to the claims of Caterpillar, Jose Rocha, Efrain Lara, and Aztec Framing Contractors, Inc.

# # #